1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLIE CHONG THAO,

11          Petitioner,                    No. CIV S-09-3572 WBS DAD P

12       vs.

13   SWARTHOUTH, Warden,                   ORDER &

14          Respondent.                    FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  The petition before the court challenges petitioner's

18   judgment of conviction entered in the Sacramento County Superior Court in 2007 for residential

19   burglary, commercial burglary, robbery, kidnapping for the purpose of robbery, false

20   imprisonment, and criminal threats.  Petitioner seeks federal habeas relief on the grounds that (1)

21   his trial counsel rendered ineffective assistance by failing to investigate and prepare for trial,

22   specifically by failing to (a) make a discovery motion; (b) prepare jury instructions; (c) hire an

23   investigator or conduct an independent investigation; (d) consult with a "facial expressionist

24   expert"; (e) have an investigator meet with petitioner; (f) object to the admission of petitioner's

25   confession based on a Miranda violation; (g) seek to exclude petitioner's confession based on

26   coercion; (h) call defense witnesses to testify about petitioner's state of mind; (i) call the county

1

1  jail psychiatric staff; and (j) obtain a psychiatric evaluation or consult with a psychiatrist; (2) his

2  appellate counsel rendered ineffective assistance by failing to raise the ineffective assistance of

3  trial counsel claims listed above on appeal; and (3) that he is actually innocent.  Petitioner also

4  seeks an evidentiary hearing on Claims 1 and 2.

5          Upon careful consideration of the record and the applicable law, the undersigned

6  will recommend that petitioner's application for habeas corpus relief be denied, in part due to his

7  failure to exhaust all of his claims in state court and in part on the merits.  The undersigned will

8  also deny petitioner's request for an evidentiary hearing.

9                              PROCEDURAL BACKGROUND

10         On November 15, 2007, a Sacramento County Superior Court jury found

11 petitioner guilty of residential burglary and commercial burglary in violation of California Penal

12 Code § 459[1]; robbery in violation of § 211; kidnapping for the purpose of robbery in violation of

13 § 209(b)(1); false imprisonment in violation of § 236; and making criminal threats in violation of

14 § 422.  (Lod. Doc. 1 (hereinafter "CT") at 169-170.)  On December 14, 2007, petitioner was

15 sentenced to life in state prison with the possibility of parole, plus seven years.  (CT 227-230.)

16         Petitioner appealed his judgment of conviction to the California Court of Appeal

17 for the Third Appellate District.  On October 21, 2008, in a reasoned opinion the state appellate

18 court reduced petitioner's sentence to life in prison with the possibility of parole, plus four years

19 and eight months, but otherwise affirmed the judgment.  (Lod. Doc. 6 at 11.)  Petitioner then

20 filed a petition for review with the California Supreme Court.  (Lod. Doc. 7.)  On December 23,

21 2008, the California Supreme Court summarily denied that petition.  (Lod. Doc. 8.)

22         On December 28, 2009, petitioner filed his original federal habeas petition in this

23 court.  (Doc. No. 1.)  On January 13, 2010, petitioner filed a habeas corpus petition in the

24 Sacramento County Superior Court, which was denied on March 2, 2010.  (Lod. Docs. 9, 10.)

25 _____

26         [1]  Subsequent statutory references are to the California Penal Code unless otherwise indicated.

2

On March 18, 2010, the magistrate judge previously assigned to this case recommended that the petition be dismissed on procedural grounds.  (Doc. No. 7.)  On April 6, 2010, petitioner filed a habeas corpus petition in the California Supreme Court.  (Lod. Doc. 11.)  On May 11, 2010, the previously assigned magistrate judge vacated his earlier findings and recommendations.  (Doc. No. 9).  By order dated June 22, 2010, this case was reassigned to the undersigned magistrate judge.[2]  (Doc. No. 11.)  On October 6, 2010, the undersigned dismissed the original habeas petition and granted petitioner leave to file an amended petition.  (Doc. No. 13.)  On October 13, 2010, the California Supreme Court summarily denied petitioner's habeas corpus petition.  (Lod. Doc. 12.)  On November 23, 2010, the undersigned issued findings and recommendations recommending that the federal habeas petition be dismissed without prejudice on procedural grounds.  (Doc. No. 16.)

On December 7, 2010, petitioner filed his first amended petition (hereinafter "FAP").  (Doc. 18.)  On January 13, 2011, the undersigned vacated the prior findings and recommendations and ordered a response to the FAP.  (Doc. No. 19.)  Respondent filed an answer on March 14, 2011.  (Doc. No. 22.)  Petitioner filed a traverse on April 18, 2011.  (Doc. No. 27.)

---

[2]  The order of reassignment noted that petitioner had raised "the exact same challenges to the same conviction . . . in an earlier petition to this court, Case No. CIV S-09-3536 WBS DAD." (Doc. No. 11 at 1.)  In that action (hereinafter "Thao I"), in an order dated January 29, 2010, the undersigned observed that "it appears [petitioner] did not raise any of the claims set forth in his pending federal petition on appeal or in any subsequent petitions for post-conviction relief to the California Supreme Court."  (Thao I, Doc. 9 at 2.)  Accordingly, the undersigned recommended that the petition be dismissed due to petitioner's failure to exhaust his claims in state court (id. at 4), and the assigned district judge entered judgment adopting those recommendations on March 5, 2010.  (Thao I, Doc. 13.)  Thereafter, petitioner completed pursuing a second round of review in the California Supreme Court.  (See Lod. Doc. 12, described above).  Accordingly, the exhaustion analysis set forth in Thao I is not applicable to this action.  See Kuhlmann v. Wilson (1986) 477 U.S. 436, 449 (1986) (""[A] subsequent application for a writ of habeas corpus . . . need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.")

FACTUAL BACKGROUND

In its unpublished memorandum and opinion, shortening petitioner's sentence as described above but in all other respects affirming his judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

In November 2006, L.P., branch manager and vice-president of a bank in Elk Grove, California, lived with her husband and daughter in the City of Galt.

On the morning of November 3, 2006, L.P.'s husband left the house to go to work at approximately 6:00 a.m. The couple's daughter left for school at approximately 7:10 a.m. As L.P. prepared for work, still wearing her robe and slippers, she heard the doorbell ring. She looked through the peephole but did not recognize the person standing there. When L.P. opened the door, defendant pointed a gun at her and entered the home. L.P. screamed. Defendant told her to be quiet and said, "Give me your money." L.P. gave defendant $75 that was sitting on the kitchen counter, and $40 to $50 from her purse. She told defendant that was all the money she had. He said, "Let's go to the bank." When L.P. said the bank was closed, defendant said, "You have the key. Get the key now." L.P. retrieved her keys from the bedroom and got into the back seat of defendant's car as instructed. Defendant climbed into the driver's seat and placed the gun on his lap.

Defendant drove to the bank where L.P. worked. During the drive, L.P. recognized defendant as a customer of the bank and her daughter's former tutor. When they arrived at the bank, defendant donned a black mask. L.P. unlocked the back door and entered the bank with defendant following behind her. L.P. silenced the alarm and opened the vault door. Unable to access the vault money without a second key, L.P. opened the safe deposit box containing her till money instead and gave defendant the contents -approximately $5,000, including $35 in "bait" money. FN2 Defendant said, "That's not enough. I want more." Although L.P. kept telling defendant she could not open the file cabinet to access the cash in the vault, defendant insisted she had a key. Finally, L.P. suggested that defendant shoot open the box containing the second access key. Defendant grabbed a tool and pried the lock box open. L.P. opened the cabinet and placed the cash, including "bait" money and an electronic tracking device, into defendant's backpack. Defendant said, "Let's go," and they left the bank. As she exited the bank, L.P. reset the alarm and locked the doors. Defendant ordered L.P. back into the car, and then climbed into the driver's seat. He laid the gun on his lap and told L.P. he was taking her home.

4

FN2.  L.P. described "bait" money as bills from which the serial numbers have been recorded for tracking purposes in the event of a robbery.

Defendant initially headed in the direction of L.P.'s home. During the drive, L.P.'s cell phone rang twice, and defendant took it from her.  As he neared Galt, defendant turned away from L.P.'s home and down a rural road unfamiliar to L.P.  Defendant stopped the car and told L.P. not to identify him, threatening that he and some of his friends would hurt L.P. and her family if she did.  When L.P. promised not to tell, he told her to get out of the car and told her to keep walking and not to stop to talk to anyone.  L.P. got out of the car and started walking.  Defendant drove away, but returned once, reminded her to "do what he said and keep walking," and then drove off.  As L.P. walked towards her home, two people stopped and offered help. L.P. declined, fearing defendant would follow through on his threats.  As she neared her home, L.P.'s husband, driving by on his way to check on her after hearing the bank had been robbed, stopped and picked her up.  They drove back home, notified police and then drove to the Galt Police Department to report the incident.

Bank surveillance cameras recorded the defendant and L.P. in the bank that morning.  L.P. provided police with a description of defendant and his vehicle and informed them he had worked at the Elk Grove Learning Center and had tutored their daughter.  Police obtained defendant's name and address from the Learning Center, but were unable to find defendant in Sacramento County.

The next day, defendant was apprehended in San Francisco following a high-speed chase through the city.  Defendant had in his possession the backpack used in the robbery, along with over $22,000 in cash.  Police later recovered over $55,700 in cash, the electronic tracking device and the "bait" money, along with the pants, ski mask and replica pistol used by defendant in the robbery. Defendant admitted L.P.'s version of events, and told police he planned the crimes and acted alone. FN3

FN3. At trial, defendant testified he and L.P. planned the bank robbery and agreed to meet in San Francisco the next day to split the proceeds.

By complaint, deemed to be the information, defendant was charged with first degree residential burglary (count one), first degree robbery (count two), kidnapping for the purpose of robbery (count three), second degree commercial burglary (count four), second degree robbery (count five), false imprisonment (count six) and criminal threats (count seven).

Defendant was tried by a jury and found guilty on all counts. The court imposed a sentence of life with the possibility of parole on

count three, plus a consecutive aggregate term of seven years comprised of the middle term of four years on count one; one year four months (one-third the middle term) on count two; the middle term of two years on count four; one year (one-third the middle term) on count five; the middle term of two years on count six; and eight months (one-third the middle term) on count seven.  The court stayed execution of the sentences for second degree commercial burglary (count four) and false imprisonment (count six) pursuant to section 654.

(Lod. Doc. 6 at 1-5)[3]

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

/////

---

[3]  As noted, petitioner's sentence was modified on appeal to a term of life with the possibility of parole plus four years eight months.  (Lod. Doc. 6 at 11.)

1      For purposes of applying § 2254(d)(1), "clearly established federal law" consists

2   of holdings of the United States Supreme Court at the time of the state court decision.  Stanley v.

3   Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06

4   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

5   clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at

6   859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010).

7      A state court decision is "contrary to" clearly established federal law if it applies a

8   rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

9   Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640

10  (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

11  grant the writ if the state court identifies the correct governing legal principle from the Supreme /

12  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4]

13  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

14  F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

15  simply because that court concludes in its independent judgment that the relevant state-court

16  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

17  application must also be unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v.

18  Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

19  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

20  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

21  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

22  the state court's decision."  Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

23  (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

24  ───────────────

25      [4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26  presented in the state court proceeding."  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)
    (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

7

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's
ruling on the claim being presented in federal court was so lacking in justification that there was
an error well understood and comprehended in existing law beyond any possibility for fairminded
disagreement." Harrington,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a
reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.
Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th
Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because
of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by
considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state
court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.
2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning
from a previous state court decision, this court may consider both decisions to ascertain the
reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en
banc). "When a federal claim has been presented to a state court and the state court has denied
relief, it may be presumed that the state court adjudicated the claim on the merits in the absence
of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at
784-85. This presumption may be overcome by a showing "there is reason to think some other
explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker,
501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides
no reasoning to support its conclusion, a federal habeas court independently reviews the record to
determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860;
Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is
not de novo review of the constitutional issue, but rather, the only method by which we can
determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at

8

1  853.  Where no reasoned decision is available, the habeas petitioner still has the burden of

2  "showing there was no reasonable basis for the state court to deny relief."  <u>Harrington</u>, 131 S. Ct.

3  at 784.

4         When it is clear, however, that a state court has not reached the merits of a

5  petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

6  federal habeas court must review the claim de novo.  <u>Stanley</u>, 633 F.3d at 860; <u>Reynoso v.</u>

7  <u>Giurbino</u>, 462 F.3d 1099, 1109 (9th Cir. 2006); <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir.

8  2003).

9  II.  <u>Petitioner's Claims</u>

10      A.  <u>Ineffective Assistance of Trial Counsel</u>

11         In his FAP petitioner alleges that his trial counsel rendered ineffective assistance

12  by failing to investigate and prepare for trial.  Specifically, petitioner lists the following ways in

13  which his attorney's performance allegedly fell short of Sixth Amendment standards: trial

14  counsel failed to (a) make a discovery motion; (b) prepare jury instructions; (c) hire an

15  investigator or conduct an independent investigation; (d) consult with a "facial expressionist

16  expert"; (e) have an investigator meet with petitioner; (f) object to petitioner's confession being

17  admitted into evidence based on a <u>Miranda</u> violation; (g) seek to exclude petitioner's confession

18  based on the ground that it was obtained through coercion; (h) call defense witnesses to testify

19  about petitioner's state of mind; (i) call the county jail psychiatric staff as defense witnesses at

20  trial; and (j) obtain a psychiatric evaluation or consult with a psychiatrist.  (FAP, Attached Mem.

21  of P. & A. at 5-10.)

22         Respondent attacks most of these sub-claims on both procedural and substantive

23  grounds.  (Answer at 1) ("Petitioner's claim that his trial counsel was ineffective is in part

24  untimely, in part unexhausted, and in part procedurally defaulted. [] Petitioner's trial counsel was

25  not ineffective[.]")  As discussed below, the court finds some of petitioner's ineffective

26  assistance of counsel sub-claims to be clearly unexhausted and, therefore, will deny relief with

1  respect to those sub-claims on failure to exhaust grounds.  As to timeliness, because AEDPA's

2  statute of limitations is not jurisdictional, see Green v. White, 223 F.3d 1001, 1003-04 (9th Cir.

3  2000), the court elects to deny relief as to petitioner's remaining ineffective assistance of counsel

4  sub-claims on the merits rather than reach the tolling issues raised by respondent.

5          Similarly, a reviewing court need not invariably resolve the question of procedural

6  default prior to ruling on the merits of a claim where the default issue turns on difficult questions

7  of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359

8  F.3d 708, 720 (5th Cir. 2004); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002

9  ("Procedural bar issues are not infrequently more complex than the merits issues presented by the

10 appeal, so it may well make sense in some instances to proceed to the merits if the result will be

11 the same.")) .  Under the circumstances presented here the court finds that petitioner's ineffective

12 assistance of trial counsel claim, to the extent it is not unexhausted, can be resolved more easily

13 by addressing it on the merits.  Accordingly, this court will assume that petitioner's ineffective

14 assistance claim is not procedurally defaulted.

15              1.  Exhaustion of State Remedies

16          Respondent argues that the following ineffective assistance sub-claims must be

17 dismissed due to petitioner's failure to exhaust those sub-claims in state court: (a) failure to make

18 a discovery motion; (b) failure to prepare jury instructions; (c) failure to hire an investigator or

19 conduct an independent investigation; (d) failure to consult with a "facial expressionist expert";

20 (h) failure to call defense witnesses to testify about petitioner's state of mind; and (i) failure to

21 call the county jail psychiatric staff as defense witnesses at trial.  Respondent asserts that none of

22 these sub-claims were presented in either of petitioner's two petitions filed with the California

23 Supreme Court, the first on direct review and the second seeking habeas relief.  (See Lod. Docs.

24 7, 11.)

25          State courts must be given the first opportunity to consider and address a state

26 prisoner's habeas corpus claims.  See Rhines v. Weber, 544 U.S. 269, 273-74 (2005) (citing Rose

1    v. Lundy, 455 U.S. 509, 518-19 (1982)); Scott v. Schriro, 567 F.3d 573, 583 (9th Cir. 2009)

2    ("All exhaustion requires is that the state courts have the opportunity to remedy an error, not that

3    they actually took advantage of the opportunity."); King v. Ryan, 564 F.3d 1133 (9th Cir. 2009)

4    ("Habeas petitioners have long been required to adjudicate their claims in state court - that is,

5    'exhaust' them - before seeking relief in federal court."); Farmer v. Baldwin, 497 F.3d 1050,

6    1053 (9th Cir. 2007) ("This so-called 'exhaustion requirement' is intended to afford 'the state

7    courts a meaningful opportunity to consider allegations of legal error' before a federal habeas

8    court may review a prisoner's claims.") (quoting Vasquez v. Hillery, 474 U.S. 254, 257 (1986)).

9    In general, a federal court will not grant a state prisoner's application for a writ of habeas corpus

10   unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C.

11   § 2254(b)(1).  A state will not be deemed to have waived exhaustion unless the state, through

12   counsel, expressly waives the requirement.  28 U.S.C. § 2254(b)(3).

13           A petitioner satisfies the exhaustion requirement by fairly presenting to the

14   highest state court all federal claims before presenting the claims to the federal court.  See

15   Baldwin v. Reese, 541 U.S. 27, 29 (2004); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v.

16   Connor, 404 U.S. 270, 276 (1971); Wooten v. Kirkland, 540 F.3d 1019, 1025 (9th Cir. 2008).  A

17   federal claim is fairly presented if the petitioner has described the operative facts and the federal

18   legal theory upon which his claim is based.  See Wooten, 540 F.3d at 1025 ("Fair presentation

19   requires that a state's highest court has 'a fair opportunity to consider . . . and to correct [the]

20   asserted constitutional defect.'"); Lounsbury v. Thompson, 374 F.3d 785, 787 (9th Cir. 2004)

21   (same) (quoting Picard, 404 U.S. at 276)); Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir.

22   1999).  This requires petitioner to have "characterized the claims he raised in state proceedings

23   specifically as federal claims."  Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir. 2005)

24   (emphasis in original) (internal citation omitted).  "In short, the petitioner must have either

25   referenced specific provisions of the federal constitution or cited to federal or state cases

26   involving the legal standard for a federal constitutional violation.  Mere 'general appeals to broad

constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." Id. (quoting Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999)). Thus, a claim is unexhausted where the petitioner did not fairly present the factual or legal basis for the claim to the state court. See Picard v. Connor, 404 U.S. at 275. "[I]t is not enough . . . that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982). As a rule, the "mere similarity of claims is insufficient to exhaust." Duncan, 513 U.S. at 365-66.

On the other hand, "new factual allegations do not ordinarily render a claim unexhausted." Beatty v. Stewart, 303 F.3d 975, 989 (9th Cir. 2002). A claim is unexhausted only if new factual allegations "fundamentally alter the legal claim already considered by the state courts." Vasquez v. Hillery, 474 U.S. 254, 260 (1986). See also Beatty, 303 F.3d at 989-90; Weaver, 197 F.3d at 364. It is not necessary that "every piece of evidence" supporting federal claims have been presented to the state court. Chacon v. Wood, 36 F.3d 1459, 1469 n.9 (9th Cir. 1994) (emphasis in original). See also Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008). Rather, the introduction of new evidence affects the fair presentation requirement only when it "substantially improves the evidentiary basis" for petitioner's claims. Aiken v. Spalding, 841 F.2d 881, 883 (9th Cir. 1988). New factual allegations that are merely cumulative of those presented to the state court do not transform the claim and thus do not require exhaustion. Hillery v. Pulley, 533 F. Supp. 1189, 1200-02 (E.D. Cal. 1982), aff'd, 733 F.2d 644 (9th Cir. 1984), aff'd, 474 U.S. 254 (1986). See also Weaver, 197 F.3d at 364 (acknowledging that although the "precise factual predicate" for a claim had changed after the evidentiary hearing in federal court, the claim remained rooted in the same incident and was therefore exhausted).

Thus, exhaustion does not require that every piece of evidence supporting the federal claim be presented to the highest state court. Davis, 511 F.3d at 1009. Rather, "to exhaust the factual basis of the claim, the petitioner must only provide the state court with the operative facts, that is, all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies." Id. (internal quotation marks omitted). Moreover, it is

12

1   important to keep in mind that habeas "petitions must be read in context" and that "pro se

2   [habeas] petitions are held to a more lenient standard than counseled petitions." Davis, 511 F.3d

3   at 1009 (quoting Peterson v. Lampert, 319 F.3d 1153, 1159 (9th Cir. 2003) (en banc) and Sanders

4   v. Ryder, 342 F.3d 991, 999 (9th Cir. 2003)).  Accordingly,"fair presentation" requires only that

5   claims be alleged with as much particularity as is practicable under the circumstances.  See Kim

6   v. Villalobos, 799 F.2d 1317, 1320 (9th Cir. 1986).

7             Here, having carefully reviewed both of the petitions submitted by petitioner to

8   the California Supreme Court, the undersigned concludes that sub-claims 1(a), 1(b) and 1(d)

9   were not presented to the state's highest court, and thus are not exhausted.  Indeed, petitioner did

10  not so much as mention those sub-claims in either of his petitions submitted to the state high

11  court.  (Lod. Doc. 7, 11.)

12            In sub-claim 1(c), petitioner alleges that his trial counsel failed to hire an

13  investigator or conduct an independent investigation.  In his traverse, petitioner clarifies this

14  claim by alleging that his trial counsel failed to investigate

15            whether: (1) Petitioner force[d] his way into the victim's house or
              was he invited; (2) is Petitioner in any way malicious or threaten to
16            the victim in the commerse [sic] of the crime at the bank or on the
              way to the bank (see police report); (3) and who directed Petitioner
17            to break the save [sic]lock key; it was the victim who directed
              Petitioner to do what he did.
18

19  (Traverse at 16) (record citations omitted)).  In contrast, petitioner's habeas petition submitted to

20  the California Supreme Court alleged his trial counsel's failure to investigate a mental heath

21  defense, as discussed below, but did not present any allegation that his trial counsel made the

22  errors described above.  Nor did the petition to the state high court present such facts as

23  constituting a federal claim of any sort.  This ineffective assistance of counsel sub-claim should

24  therefore be dismissed due to petitioner's clear failure to exhaust the claim in state court.

25  /////

26  /////

1    In sub-claim 1(h) of his ineffective assistance claim before this court, petitioner

2    alleges:

3        Counsel's lack of investigation also resulted in the failure to call
         important lay defense witnesses who would have helped the
4        defense to negate the element necessary for aggravated kidnapping.
         Primarily, counsel failed to call petitioner's co-worker, petitioner's
5        family . . . to testify as to petitioner's state of mind before and after
         being hospitalized of the commission of the crime.
6

7    (FAP, Attached Mem. of P. & A. at 7.)  In his traverse, petitioner alleges that his co-workers

8    "would have verified to the jury that Petitioner and the victim are friend[s]; thus, negate

9    prosecution assertion that Petitioner kidnapped the victim."  (Traverse at 6.)  As to potential

10   family member witnesses, petitioner suggests that if called they would have testified that

11   "Petitioner has suffered a loss[] of his grand-parent that triggered a traumatic depression,

12   dissociation with reality and post-traumatic symptoms that [a]ffects Petitioner's ability to form

13   the necessary intent to commit kidnapping and robbery."  (Traverse at 7.)

14       In comparison, in his habeas petition filed before the California Supreme Court,

15   petitioner asserted that his trial counsel failed to "investigate mental health defenses"; "failed to

16   introduce and do any pre-trial investigation as to any evidence whatsoever to establish

17   petitioner's mental health at the time of the incident; and "failed to investigate psychiatric

18   conditions that could have led to a conviction of a lesser charge[.]"  (Lod. Doc. 11 at 7, 9-10.)

19   Petitioner further claimed that he failed to receive "the U.S. Constitutionally mandated

20   representation of effective assistance of trial and appellate counsel," and he described this as an

21   "error of U.S. Constitutional magnitude."  (Lod. Doc. 11 at 7.)  In his habeas petition to the

22   California Supreme Court petitioner cited one federal case, Brecht v. Abrahamson, 507 U.S. 619

23   (1993), which does not address ineffective assistance of counsel issues.  Rather, in Brecht the

24   U.S. Supreme Court discussed the "harmless error" analysis for federal claims of trial error,

25   including "deprivation of the right to counsel."  507 U.S. at 629-30 (citing Gideon v.

26   Wainwright, 372 U.S. 335 (1963)).

1    The undersigned finds that petitioner exhausted sub-claim 1(h) insofar as it

2    alleges that petitioner's trial counsel failed to investigate the defense theory that petitioner's

3    mental condition at the time of the crimes negated the element of intent necessary for conviction

4    on one or more of the charges against him.  However, not exhausted are petitioner's allegations

5    contained in this sub-claim that his trial counsel failed to call as witnesses his co-worker who

6    would have testified that petitioner and the victim were friends.  Such allegations are a different

7    matter entirely and were clearly not raised or alluded to in the habeas petition filed by petitioner

8    with the California Supreme Court.

9    In sub-claim 1(i), petitioner alleges before this court that "[t]rial counsel could

10   and should have called the staffs (doctors) [sic] who treated and provided [psychiatric]

11   counseling to petitioner at county jail . . . [and] could have testif[ied] to the substantial body of

12   medical knowledge directly connecting traumatic depression, dissociation with reality, and post-

13   traumatic symptoms which can have a profound inhibiting effect upon the ability to think and act

14   clearly and purposefully to commit the crime." (FAP, Mem. of P. & A. at 8.)  As described

15   above, in his habeas petition filed with the California Supreme Court petitioner generally alleged

16   that his trial counsel failed to investigate and pursue a defense strategy based on petitioner's

17   mental health at the time of his crimes.  (Lod. Doc. 11 at 7, 9-10.)   Because the court here is

18   concerned only with weeding out any obviously unexhausted claims before turning to the merits,

19   the court will allow that petitioner's sub-claim 1(i), like sub-claim 1(h), is exhausted to the extent

20   it alleges that petitioner's trial counsel provided ineffective assistance in failing to investigate a

21   mental health defense as to the question of intent in connection with one or more of the charged

22   offenses.

23   In sum, the undersigned will recommend that only petitioner's ineffective

24   assistance of trial counsel sub-claims 1(a), 1(b), 1(c), and 1(d) be dismissed due to his clear

25   failure to exhaust those claims by presenting them to the California Supreme Court.

26   /////

15

2.  <u>Merits of Remaining Ineffective Assistance Claims</u>

The court now turns to the merits of petitioner's remaining sub-claims of Claim 1, in which he alleges that his trial counsel rendered ineffective assistance by failing to: (e) have an investigator meet with petitioner; (f) object to the admission into evidence of petitioner's confession based on a <u>Miranda</u> violation; (g) seek to exclude petitioner's confession from evidence on the ground that it was coerced; (h/i) investigate petitioner's mental state at the time of the crimes (<u>see</u> discussion at II(a)(1), <u>ante</u>); and (j) obtain a psychiatric evaluation or consult with a psychiatrist.

In discussing the merits of these claims, respondent notes that the deferential AEDPA standard does not apply because they have never been adjudicated on the merits by a state court.  (Answer at 6, fn.3.)  As discussed above, petitioner raised claims 1(c), 1(h), and 1(i) in his habeas petition filed with the California Supreme Court.  The court finds that petitioner also raised sub-claim 1(e), alleging that his trial counsel never had an investigator meet with petitioner, in his habeas petition before the California Supreme Court in which he alleged in part that "[p]etitioner  never met with the investigator nor did anyone else[.]"  Lod. Doc. 11 at 22.  Finally, respondent concedes that petitioner raised ineffective assistance sub-claims 1(f), 1(g), and 1(j) in his petition filed before the California Supreme Court.  (Answer at 18.)  The California Supreme Court summarily denied the petition in its entirety (Lod. Doc. 12), which respondent interprets as a denial for untimeliness based on the look-through doctrine.  (Answer at 12) (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803, (1991)); <u>see</u> <u>also</u> Lod. Doc. 10 at 1-2 (Sacramento Superior Court's denial of  petitioner's habeas petition for untimeliness, among other reasons, on March 2, 2010)).  Accordingly, the court will review all of the aforementioned ineffective assistance sub-claims de novo.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

16

1   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

2   counsel, a petitioner must first show that, considering all the circumstances, counsel's

3   performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a

4   petitioner identifies the acts or omissions that are alleged not to have been the result of

5   reasonable professional judgment, the court must determine whether, in light of all the

6   circumstances, the identified acts or omissions were outside the wide range of professionally

7   competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

8   petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

9   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

10  counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

11  694.  A reasonable probability is "a probability sufficient to undermine confidence in the

12  outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

13  (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

14  deficient before examining the prejudice suffered by the defendant as a result of the alleged

15  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

16  sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

17  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

18          Defense counsel has a "duty to make reasonable investigations or to make a

19  reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at

20  691.  "This includes a duty to . . . investigate and introduce into evidence records that

21  demonstrate factual innocence, or that raise sufficient doubt on that question to undermine

22  confidence in the verdict."  Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v.

23  Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).   In this regard, it has been recognized that "the

24  adversarial process will not function normally unless the defense team has done a proper

25  investigation."  Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing

26  Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)).  Therefore, counsel must, "at a minimum,

17

conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted)). On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient.  See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995).  "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'"  Wiggins, 539 U.S. at 533 (quoting Strickland, 466 U.S. at 691).  See also Kimmelman, 477 U.S. at 385 (counsel "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at 1173-74.

A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'"  United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.'"  Bragg, 242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).  In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.' "  Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).  See also Harrington, 131 S.Ct. at 788 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (quoting Strickland, 466 U.S. at 690).  There is in addition a strong

/////

18

1  presumption that counsel "exercised acceptable professional judgment in all significant decisions

2  made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

3          In his sub-claim 1(e), petitioner alleges that his trial counsel informed him that an

4  investigator named Bill Lewis would come and talk to him at the Sacramento County Jail.  A

5  year later, when petitioner still had not met with the investigator, he voiced his concerns to his

6  attorney, who handed petitioner an investigation report prepared by petitioner's former public

7  defender.  (FAP, Mem. of P. & A at 7; Traverse at 17-18; see FAP, Ex. C at 41-51 (investigative

8  report)).  Petitioner suggests that a proper investigation would have proved:  (1) that petitioner

9  and his victims were friends, thus petitioner could not have "kidnapped" her because she went

10 with him willingly; and (2) that petitioner's psychological problems at the time of his crimes

11 were so great as to negate the element of intent with respect to aggravated kidnapping and/or

12 other offenses.  (FAP, Attached Mem. of P. & A. at 7; Traverse at 7.)

13         Petitioner's mere suggestion that additional investigation would have aided his

14 defense is insufficient to demonstrate what evidence, if any, additional investigation would have

15 uncovered.  See Bragg, 242 F.3d at 1088 (no ineffective assistance where petitioner did "nothing

16 more than speculate that, if interviewed," a witness might have given helpful information); Dows

17 v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (no ineffective assistance of counsel where there was

18 no evidence in the record that a helpful witness actually existed and petitioner failed to present an

19 affidavit establishing that the alleged witness would have provided helpful testimony for the

20 defense; see also Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2004) ("When

21 [counsel's] alleged deficiency is a failure to investigate, the movant must provide the court

22 sufficiently precise information, that is, a comprehensive showing as to what the investigation

23 would have produced.") (internal citation omitted); Chavez v. Pulley, 623 F. Supp. 672, 685

24 (E.D. Cal. 1985) (ineffective assistance claim denied due to petitioner's failure to make "specific

25 allegation[s] of what such an investigation might have produced or show how its omission . . .

26 prejudiced his defense[.]")

1    Having reviewed the trial record, the undersigned finds the first of these sub-

2    claims (that proper investigation would have established that the victim went with him willingly)

3    is simply not credible, and with respect to neither sub-claim has petitioner make a satisfactory

4    showing as to what further investigation would have produced or how the result of such

5    investigation would have changed the course of the trial.  See United States v. Berry, 814 F.2d

6    1406, 1409 (9th Cir. 1987) (appellant failed to meet the prejudice prong of an ineffective

7    assistance claim because he offered no indication of what potential witnesses would have

8    testified to or how their testimony might have changed the outcome of the hearing); Wildman v.

9    Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that a helpful expert could be found or

10   would testify on petitioner's behalf insufficient to establish prejudice); Richardson, 379 F.3d at

11   488.  Of course, the Strickland standard "places the burden on the defendant, not the State, to

12   show a 'reasonable probability' that the result would have been different."  Wong v. Belmontes,

13   ___ U.S. ___, 130 S. Ct. 383, 390-391 (2009) (quoting Strickland, 466 U.S. at 694).  Petitioner

14   has failed to meet that burden with respect to this aspect of his ineffective assistance of counsel

15   claim.  Accordingly, he is not entitled to federal habeas relief.

16   The undersigned notes that with respect to several of his ineffective assistance

17   sub-claims, petitioner gives sort shrift to the prejudice prong of the Strickland standard.  Rather,

18   petitioner merely alleges some wrongdoing on his trial counsel's part without attempting to

19   establish that "but for counsel's unprofessional errors," he would not have been convicted and/or

20   sentenced to same extent.  466 U.S. at 694.  Given the overwhelming evidence presented against

21   petitioner at trial and his own credibility issues, petitioner is confronted with a daunting task in

22   arguing that any one act or omission by his trial counsel would have changed the outcome of his

23   prosecution.  See Lod Doc. 6 at 4-5 (describing bank surveillance cameras' recording of

24   petitioner's actions at the bank; police's recovery of cash, electronic tracking device, and "bait"

25   money from petitioner, along with the pants, ski mask, and pistol used in the robbery; petitioner's

26   confession to police that he planned the crime and acted alone); 2 RT  531 (trial court at

20

1   sentencing describes petitioner's version of events, in which he and the victim conspired to rob

2   the bank, as "clearly fabricated")).  Instead, petitioner limits himself to only general and

3   conclusory statements regarding the prejudicial effect of his trial attorney's alleged errors.  See

4   FAP, Mem. of P. & A. at 9-10 (reduction of petitioner's sentence on direct appeal "prove[s]

5   unequivocally the ineffective assistance of trial counsel"); Traverse at 19 ("[B]ecause of

6   counsel's deficient performance, prejudice is the foregone conclusion as petitioner received

7   several more years on his sentence.")  Skirting the requirement that he establish prejudice

8   flowing from the alleged ineffective assistance of counsel cannot avail petitioner, however.  The

9   court will therefore recommend that petitioner be denied relief as sub-claim 1(e).

10          In his ineffective assistance sub-claims 1(f) and 1(g), petitioner alleges that his

11  trial counsel "failed to investigate and pursue 'Miranda'/voluntary situation[5] and/or the coercion

12  that occurred with the threats against [petitioner] even with repeated requests to do so by

13  petitioner."  (FAP, Mem. of P. & A. at 7.)  In support of these allegations, petitioner cites a

14  portion of the record in which the parties stipulated that the following statement would be read to

15  the jury at trial:

16              During the defendant's interview, he stated on three occasions that
                he did not want to answer any more questions.  The defendant then
17              continued to answer questions.  Detective Mitchell asked him
                where he obtained the idea to commit this type of crime.  Detective
18              Mitchell asked if he got the idea from a movie or television show.
                At that point, the defendant refused to answer any additional
19              questions.

20  (2 RT at 423-424.)  Unpacking these claims, the court presumes that petitioner takes the

21  following position: By stipulating to the above statement to be read to the jury, without

22  investigating and pursuing the defense theory that petitioner's confession was involuntary,

23  coerced, and obtained in violation of his constitutional due process rights, trial counsel rendered

24  ineffective assistance.  Again, such allegations do not satisfy the Strickland test, since petitioner

25

26          [5]  Miranda v. Arizona, 384 U.S. 436 (1966).

                                                21

has not provided any context for the entry into this trial stipulation.  Nor has petitioner provided any further information regarding the circumstances of his confession.  Without more, it is impossible for this court to determine whether trial counsel could have successfully moved to exclude petitioner's confession on <u>Miranda</u> grounds.  <u>See</u> <u>Michigan v. Mosely</u>, 423 U.S. 96, 102-103 (1975) (<u>Miranda</u> cannot "sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.").  Similarly, petitioner's bare allegation that police made unspecified "threats" to coerce his confession is too vague and conclusory to show that counsel should have moved to have his confession excluded due to coercion.

Even assuming <u>arguendo</u> that petitioner's trial counsel incompetently failed to move to exclude petitioner's statements obtained in violation of his due process rights, there is no indication in this record that this would have changed the outcome of petitioner's trial.  If petitioner's confession (in which he stated that he acted alone) was obtained in violation of <u>Miranda</u>, it would still have been admissible to impeach petitioner's testimony that he and the victim were co-conspirators in the robbery scheme.  <u>Harris v. New York</u>, 401 U.S. 222, 225 (1971); <u>Pollard v. Galaza</u>, 290 F.3d 1030, 1033 (9th Cir. 2002).  Moreover, given the overwhelming evidence arrayed against petitioner, the jury's verdict clearly did not hinge on petitioner's confession.  Thus these ineffective assistance sub-claims should be rejected as well.

Sub-claims 1(h), 1(i) and 1(j) concern defense counsel's alleged failure to investigate and pursue a defense based on petitioner's mental condition at the time of the crimes. Here again, it is not clear from the allegations of the petition why petitioner believes his counsel's decision not to pursue a state-of-mind defense was unprofessional or incompetent.  It could well be that defense counsel saw little to gain by inquiring into petitioner's mental health during his clearly premeditated crime spree.  In this regard, petitioner merely argues that

> [t]he mental health defense would have been significant and
> substantial as Petitioner had no prior criminal history and this
> aberration in his life can only be explained by some sort of mental

22

1
2
3

> breakdown . . .[.]  A reasonable jury would have concluded that Petitioner lacked the requisite mental state that constituted the elements of the charged offense(s) and found him not guilty of the aggravated kidnapping, yet possibly culpable for the lesser offense of kidnapping.

4  (Traverse at 21-22.)  With respect to the charge of kidnapping for the purpose of robbery,

5  petitioner's conviction was premised on a finding that he acted with the intent to commit robbery

6  and did not actually and reasonably believe that the victim consented to being moved.  (CT 144.)

7  However, petitioner has alleged only that, prior to his crime spree, he was in emotional distress

8  following the death of his grandfather.  Nothing in the record or in petitioner's own allegations

9  suggest that he was incapable of forming the intent required for conviction on this charge.

10  Petitioner's bare assertion that further investigation into his mental state would have revealed

11  evidence that would have negated the intent element of aggravated kidnapping in the minds of

12  the jury, is too speculative to meet the high bar set by <u>Strickland</u>. Thus these ineffective

13  assistance sub-claims fail as well.

14          In sum, petitioner is not entitled to federal habeas relief with respect to his any of

15  his exhausted sub-claims of ineffective assistance of trial counsel.

16          B.  <u>Ineffective Assistance of Appellate Counsel</u>

17          Petitioner asserts that his appellate counsel rendered ineffective assistance by

18  failing to raise all of the ineffective assistance of trial counsel claims that he now presents in the

19  FAP.  (FAP, Mem. of P. & A. at 10-11.)  He argues that the California Court of Appeal's

20  reduction of his sentence in its October 2008 order was a "red flag" that should have spurred

21  appellate counsel to raise these claims.  (<u>Id</u>. at 11.)  As before, respondent argues both procedural

22  and substantive grounds for denial of the FAP.  (Answer at 17-20.)  Because the undersigned

23  finds this claim clearly meritless, as discussed below, there is no need to address respondent's

24  procedural arguments.

25  /////

26  /////

1          Preliminarily, the court must determine whether this claim is subject to AEDPA

2   review.  For the reasons addressed below, the undersigned will review these claims de novo.  As

3   discussed above, petitioner's habeas petition filed with the California Supreme Court made

4   numerous allegations of ineffective assistance of trial counsel, herein labeled sub-claims 1(e),

5   1(f), 1(g), 1(h), 1(i) and 1(j).  In that state habeas petition, petitioner likewise argued that his

6   appellate counsel was ineffective for failing to raise on appeal these various mistakes by trial

7   counsel.  (Lod. Doc. 11 at 22-25.)  Looking through the California Supreme Court's summary

8   denial of that petition (Lod. Doc. 12) to the last reasoned decision addressing petitioner's claims

9   of ineffective assistance of appellate counsel, the Sacramento County Superior Court rejected this

10  claim, stating:

11              [P]etitioner claims that his appellate counsel was ineffective for
            failing to raise any of these ineffective assistance of trial counsel
12          claims on appeal. [¶]  As petitioner's ineffective assistance of trial
            counsel claims all fail, this claim fails.  In addition, most of
13          Petitioner's ineffective assistance of trial [counsel] claims involve
            matters outside the record, that appellate counsel could not have
14          successfully raised on appeal.

15  (Lod. Doc. 10 at 3.)  Respondent avers that: "The court denied all of Petitioner's IAC-trial

16  counsel claims based on untimeliness.  (Lod. Doc. 10 at 1-3 [internal citations omitted.])

17  Therefore, according to respondent, the Sacramento County Superior Court's statement that "[a]s

18  petitioner's ineffective assistance of trial counsel claims all fail, this claim fails" means that the

19  court was also denying the IAC-appellate counsel claims based on untimeliness."  (Answer at

20  19.)  Respondent proceeds to analyze petitioner's ineffective assistance of appellate counsel

21  claims according to the Strickland standard, as will the undersigned.

22          The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

23  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

24  However, an indigent defendant "does not have a constitutional right to compel appointed

25  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

26  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

                                                 24

1   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

2   ability of counsel to present the client's case in accord with counsel's professional evaluation

3   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n. 4 (9th

4   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

5   not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

6   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

7   showing of deficient performance as well as prejudice).  Thus, appellate counsel is not deficient

8   for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice

9   in this context, petitioner must show that, but for appellate counsel's errors, he probably would

10  have prevailed on appeal.  Id at 1434 n. 9.

11          Here, the court has found that all of petitioner's ineffective assistance of trial

12  counsel claims are meritless, most obviously because petitioner has not shown that he was

13  prejudiced by any of trial counsel's actions.  Petitioner's appellate counsel had no obligation to

14  raise meritless issues on appeal.  Strickland, 466 U.S. at 687-88.  Accordingly, petitioner is not

15  entitled to federal habeas relief with respect to his claim that his appellate counsel provided

16  ineffective assistance.

17          C.  Actual Innocence

18          Finally, petitioner asserts that he is actually innocent of some or all of the charges,

19  (petitioner does not specify) of which he was convicted.  Characterizing this as "part of" his

20  ineffective assistance claim, petitioner makes no attempt to allege facts that would establish his

21  innocence, apparently hoping that such facts might be unearthed at some future evidentiary

22  hearing.  (FAP, Mem. of P. & A. at 12; Traverse at 2.)

23          In Herrera v. Collins, 506 U.S. 390 (1993), a majority of the Supreme Court

24  assumed, without deciding, that a freestanding claim of actual innocence is cognizable under

25  federal law.  In this regard, the court observed that "in a capital case a truly persuasive

26  demonstration of 'actual innocence' made after trial would render the execution of a defendant

25

1   unconstitutional, and warrant federal habeas relief if there were no state avenue open to process

2   such a claim." 506 U.S. at 417.  A different majority of the Supreme Court explicitly held that a

3   freestanding claim of actual innocence is cognizable in a federal habeas proceeding.  Compare

4   506 U.S. at 417 with 506 U.S. at 419, 430-37.  See also Jackson v. Calderon, 211 F.3d 1148,

5   1165 (9th Cir. 2000) (noting that a majority of the Justices in Herrera would have found a free-

6   standing claim of actual innocence).  Although the Supreme Court did not specify the standard

7   applicable to this type of "innocence" claim, it noted that the threshold would be "extraordinarily

8   high" and that the showing would have to be "truly persuasive."  Herrera, 506 U.S. at 417.  More

9   recently, the Supreme Court declined to resolve whether federal courts may entertain independent

10  claims of actual innocence but concluded that the petitioner's showing of innocence in the case

11  before it fell short of the threshold suggested in Herrera.  House v. Bell, 547 U.S. 518, 554-551

12  (2006).  Finally, the Supreme Court has recently once again assumed, without deciding, that a

13  federal constitutional right to be released upon proof of "actual innocence" exists.  District

14  Attorney's Office for Third Judicial Dist. v. Osborne, ___U.S.___, 129 S. Ct. 2308 (2009).  In

15  doing so, the Supreme Court noted that it is an "open question" whether a freestanding claim of

16  actual innocence exists and that the court has "struggled with it over the years, in some cases

17  assuming, *arguendo,* that it exists while also noting the difficult questions such a right would

18  pose and the high standard any claimant would have to meet."  129 S. Ct. at 2321.

19          Here, assuming arguendo that a freestanding claim of actual innocence may be

20  maintained in this non-capital case, petitioner has failed to meet the high standard necessary to be

21  entitle to federal habeas relief.  As respondent observes, petitioner has not made any showing that

22  would counter – or even cast the slightest doubt on – the overwhelming evidence presented at his

23  trial pointing to petitioner's guilt of the crimes charged, as amply recounted in the trial record

24  reviewed by this court.  This claim should therefore be rejected as well.

25  /////

26  /////

D. <u>Evidentiary Hearing</u>

Finally, petitioner seeks an evidentiary hearing on his ineffective assistance claims. Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." <u>Baja v. Ducharme</u>, 187 F.3d 1075, 1078 (9th Cir. 1999). <u>See also</u> <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1166 (9th Cir. 2005); <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." <u>Earp</u>, 431 F.3d at 1167 (citing <u>Insyxiengmay</u>, 403 F.3d at 670, <u>Stankewitz v. Woodford</u>, 365 F.3d 706, 708 (9th Cir. 2004) and <u>Phillips v. Woodford</u>, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." <u>Ortiz v. Stewart</u>, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted). Moreover, the Supreme Court has recently held that "at a minimum . . . § 2254(e)(2) still restricts the discretion of federal habeas courts to

/////

1 consider new evidence when deciding claims that were not adjudicated on the merits in state

2 court." Cullen v. Pinholster, 563 U.S. ___, ___, 131 S. Ct. 1388, 1398, 1400 (2011).

3 　　　　　In any event, petitioner has not made the showing required by § 2254(e)(2).  The

4 court concludes that no additional factual supplementation is necessary in this case and that an

5 evidentiary hearing is not appropriate because petitioner has not identified facts in support of his

6 claims that, even if established at a hearing, would entitle him to federal habeas relief.  Further,

7 petitioner has not identified any factual conflict that would require this court to hold an

8 evidentiary hearing in order to resolve.  Rather, petitioner appears merely to seek "an alternative

9 forum for trying facts and issues which a prisoner made insufficient effort to pursue in state

10 proceedings." Cullen, 131 S.Ct. at 1401.  Therefore, the undersigned will deny petitioner's

11 request for an evidentiary hearing with respect to his claims.

CONCLUSION

13 　　　　　IT IS HEREBY ORDERED that petitioner's request for an evidentiary hearing on

14 Claims 1 and 2 of the First Amended Petition for a writ of habeas corpus (Doc. No. 18) is denied.

15 　　　　　IT IS HEREBY RECOMMENDED that sub-claims 1(a), 1(b), 1(c), and 1(d) of

16 the First Amended Petition be dismissed due to petitioner's failure to exhaust those sub-claims in

17 state court, and that all remaining claims be denied on the merits.

18 　　　　　These findings and recommendations are submitted to the United States District

19 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

20 one days after being served with these findings and recommendations, any party may file written

21 objections with the court and serve a copy on all parties.  Such a document should be captioned

22 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23 shall be served and filed within seven days after service of the objections.  Failure to file

24 objections within the specified time may waive the right to appeal the District Court's order.

25 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

26 1991).  In any objections he elects to file petitioner may address whether a certificate of

28

Case 2:09-cv-03572-WBS-DAD   Document 30   Filed 06/27/11   Page 29 of 29

1  appealability should issue in the event he elects to file an appeal from the judgment in this case.

2  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

3  certificate of appealability when it enters a final order adverse to the applicant).

4  DATED: June 24, 2011.

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
thao3572.hc

29